Your Honours, may it please the Court, Attorney Yoki for Petitioner Li Yongjie. Your Honours, this case turns on the credibility issue, and we understand that normally there is substantial deference to the Board and IJ. But I think in this case, Your Honours, there is almost overwhelming evidence that the petitioner was a Tibetan Buddhist in China and continues to be in the United States. And there is substantial evidence that the judge simply engaged in nitpicking and picked some small discrepancies that the petitioner clearly established. There's four of them, and I can address each one by one. The two that are most silly, so to speak, are the Court. The Board found that there was a light shined on the petitioner, and he said it was for two to four hours, but his statement indicates it was the whole night. And he explained it was just an expression, and it diminishes the harm he suffered, Your Honours. So how can this be enough of a basis to find his testimony incredible? In another instance, he said he was hurt by a senior prisoner, or he said prison head. And to him, that was a senior prisoner, and the judge tried to argue that this means it was somebody who was working for the prison. Again, not only did he explain immediately, note that this is a mistranslation, I meant senior prisoner, but on appeal to the Board, prior counsel submitted a translation showing, another translation showing it was mistranslated. So again, this is not enough of a basis to find him not credible. Now, the two other discrepancies that at least have some merit are, one, there's a discrepancy regarding his conversion ceremony. He did misspeak as to the date of his second conversion. However, Your Honours, this has nothing to do with his claim, and the judge found him to be a practicing Tibetan Buddhist. So he simply misspoke, and it was his second conversion ceremony, and he explained that the issuing temple was far away and did it on a different date, and so they made a mistake. And we have a plethora of law that says date mistakes are not enough for finding somebody incredible. And the last discrepancy has to do with his medical record. And he testified that he got medical treatment and that he was sutured. And the medical record does not indicate that. It corroborates his other treatment, but it doesn't indicate that he received stitches. Again, you know, he does not get to dictate to the doctor what gets put in the medical record. This was my argument in the brief, that this was speculation by the judge and the board, that the judge would list every single thing that he did, but there's no evidence that the record is not genuine, and the respondent cannot simply dictate, the petitioner cannot dictate to the doctor what goes in there. Counsel, I may interject. There were two points that I seem to recall in the decision of the IJ and the board that I wanted to ask you to address. One was that I thought it recited that when he went to a conversion ceremony, he was asked about that and said he was alone and he was single. But in fact, he had a wife. He was married at the time. And, like, I'm sitting here and my wife is sitting nearby, and I find it hard to believe someone would forget they were married. Yes, Judge. So that's one point. I want to know how you deal with that. And second, there were statements from the IJ saying that he thought the testimony was canned and memorized. And I was curious for your response to that, too. Yes, Judge. And, I mean, those two kind of go hand in hand, because actually, you know, the court and the judge identified that incident as the one and only example of his nonresponsive and memorized behavior. And, again, in this case, the petitioner admitted that he misspoke on it. And right away he mentioned that he was nervous. Yeah, I understand the court point that it's unlikely, I mean, that is a strange thing to misspeak about. But the judge is an intimidating individual, Your Honor, and this is to determine your whole life here. And the gentleman was nervous. He submitted a marriage certificate, Your Honor. He submitted proof of his children, so this was not even a question. He was simply nervous. And as far as the court's demeanor finding, this was the only example cited. He never mentioned anything else. And so I believe this demeanor finding was boilerplate. He did not talk about any kind of mannerisms or pauses, just this one example where the gentleman misspoke. Well, I can just interject on that. I thought the I.I.J. also noted that, you know, his answers, you know, he looked around a lot. He didn't have a sense of confidence. And there were a lot of other, I agree with you, those may have been the main points, but there were other issues, too. For example, the date of the conversion and, you know, whether the factory he worked at had been closed or not. And, you know, it's a totality of the circumstances kind of approach. And you add all this up together, I'm just wondering how that, in your view, makes us, you know, compelled to take a different view, which is what the statute requires. Your Honor, with respect to the household register and the factory, the board in a footnote specifically indicated that they were not considering that discrepancy because the petitioner was not given an opportunity to explain. So the judge never asked the petitioner about it, never confronted him, and there is law precedent that says you must. So if the court takes a look, I believe it's on page two, they indicate they didn't rely on that. And I agree, Your Honor, it is a substantial, I mean, you have to look at the totality of the circumstances. And if the court looks overall, his testimony was extremely credible. It was lengthy, he described a brutal beating and his arrest, and then the judge simply nitpicked a few tiny things. So I believe in a case like that, it does compel a reversal. I mean, the gentleman was a Tibetan Buddhist for some 20 years, and, you know, he misspoke about the date of this conversion, but he explained why. And he even had documents, you know, corroborating the conversion. So just because he made a mistake as to the date, Your Honor, that's normally not enough to question veracity about an applicant. And if I could reserve my last two minutes, I would appreciate it. All right. Thank you, counsel. Mr. Fiorino? Judge Gould, Judge Wardlaw, Judge Donato, may it please the court. Paul Fiorino for the Attorney General. I wanted to start off with an observation that Judge Donato made, which is that the court is reviewing this record under the totality of the circumstances. And the question is whether under the totality of the circumstances, the record, substantial evidence in the record supports the adverse credibility finding. And it certainly does. Now, it's possible, as counsel points out, that some of the discrepancies had explanations, but the IJ wasn't compelled to take them and certainly wasn't persuaded by his explanations. And with regard to the demeanor testimony, I think that's very strong. I disagree that it's actually a boilerplate. The immigration judge made several observations on the record about Mr. Lee's testimony. I direct the court to look at page 110 of the record because there the IJ at the second hearing gives a summary of what transpired at the first hearing. And the IJ said, and then the testimony went on to talk about his ceremony. And when he was asked about the ceremony in 2001, he said he was single, then realized he wasn't correct and said he was nervous. He forgot all about his daughter, who was born in 1995, and so forth. I'm not going to read the whole thing, but that reflects the immigration judge's incredulity. The immigration judge who saw Mr. Lee testify observed his demeanor and was able, in a unique position, able to make an assessment of whether or not he was credible. And that is why Congress, in enacting the Real ID Act, loosened up the requirements to give more latitude to triers of fact. And it's also why, you know, case law in this court and others has recognized that demeanor findings are to be given special deference because they're made by a person who's witnessing the live testimony of the witness and is in the best position to make an assessment of the credibility. And if you take a look at, you know, a little bit further, you go on page 98 of the record, when Mr. Lee was reminded about the fact that he had a daughter, listen to what he said. The judge asks him, this is about line 18, Oh, did you forget you had a daughter in 95 too, sir? And then Mr. Lee says, Oh, yes, now I remember. My daughter was born on May the 3rd, 1995. OK, now you just take a look at that and imagine what it may have looked like live to the immigration judge who's witnessing that testimony. And that's why we think that the demeanor finding is very well supported, not to mention the fact that there's other places in the record where the immigration judge had to remind Mr. Lee to answer the question that was asked. And in more than one instance that he was confused, I can point the court to pages 114 to 115 of the record. And there was shifting evasive testimony about whether he had attended a Buddhist temple. He said, Yes, I have. No, I haven't. I went only on Sundays. And ultimately he said, No, I've never been to a Buddhist temple. In fact, the judge even had to let him go off the record and talk to his counsel to see if he could get a straight answer. And ultimately, no straight answer ever came. At page 146 to 148 of the record, the immigration judge noted that he was confused. And then again, at pages 150 to 155, the immigration judge couldn't get a straight answer. So all of that is demeanor based, made by the immigration judge live in the court. And the other discrepancies about the conversion ceremony, Mr. Lee gave three different possible dates of his conversion ceremony. Well, he gave two, and then his certificate said something else. And he offered up an explanation. Well, oh, yeah, there's actually two conversion ceremonies. There's the third thing and the fourth thing. And the immigration judge heard that and then looked at the certificate and decided that I'm not buying this. So, again, there's more evidence under the totality of the circumstances to support the adverse credibility finding here. And with respect to the sutures that he allegedly got, the medical record doesn't say anything about sutures. It gives detail about what he was given. You can give me a second here, Your Honor. I can find it. Okay, it said he was wrapped up his wounds and applied an anti-inflammatory intramuscular injection, penicillin. This is page 423 of the record. Sutures are pretty big. You expect it to be on there. And his explanation was, well, it felt like I got sutures. Well, it may have felt like that at the time, but when you went home and looked in the mirror, did you ever go back and get the sutures removed? These questions weren't asked, but this is what's going through the mind of a reasonable person. It just adds more to the totality of the circumstances supporting the immigration judge's adverse credibility finding. And then with respect to the one instance about the printing factory being closed, the immigration judge didn't follow up under Wren and ask questions to explain the discrepancy, and the board didn't rely on that. And what that shows is that the board did a really good job, a thorough and searching review of the immigration judge's decision. This was not a rubber stamp. And the board did agree that the record showed that there was an adverse credibility finding here, and this court should so find that the adverse credibility finding is supported by substantial evidence. So the government would ask the court to deny the petition for review. Unless there's any further questions from the court, we'll rest. All right. Thank you, Mr. Fiorini. Sorry. Mr. Ioffe. Yes, Your Honors. Well, just again with respect to the demeanor finding, Your Honors, on that very same page that counsel points out of the record, 98, immediately he says, I'm a little bit nervous. I've never had any experience in court. I'm sorry, Your Honor. And haven't tried hundreds and hundreds of cases in court, Your Honors. This is a familiar experience to any attorney. The respondents are very nervous. And you can see on that same page that the judge is intimidating and jumps on that. And he tells the petitioner, well, why didn't you take the grava approach that I offered to many respondents? So, you know, the petitioner knows he's under the magnifying glass. He refused to make the judge's job easier and do the grava approach, which the judge loves, because then there's far less time spent. And now the judge jumps on him for every simple time he misspoke. And again, Your Honors, he submitted a marriage certificate and he submitted his daughter's certificate. So that's not even in question. And how is that even relevant to his asylum claim? So he misspoke about the date of marriage. What does that have to do with the claim of harm based on his Tibetan Buddhism religion? Nothing, Your Honors. This is not tangential to his claim whatsoever. And so, as I argued in the brief, Your Honor, all of these, this does not amount to an adverse credibility finding, Your Honors. He was overall, under the totality of circumstances, very credible, submitted a number of documents, including photos and certificates. Thank you. Thank you very much, counsel. Lee versus Garland is submitted.
judges: Wardlaw, Gould, Donato